UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TARRANE M. TILLIS, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 23-10827-LTS |
| JOHN DEAN, | ) ) ) | |
| Respondent. | ) ) ) | |

MEMORANDUM AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

November 18, 2024

SOROKIN, J.

Tarrane Tillis, a prisoner at the Massachusetts Correctional Institution in Shirley, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Tillis alleges violations of his right to due process and his Sixth Amendment right to effective assistance of counsel. The respondent argues that each claim is either procedurally defaulted or meritless. For the reasons that follow, the petition is DENIED.

I. BACKGROUND

On December 15, 2016, a Middlesex Superior Court jury convicted Tillis of home invasion, armed assault with intent to rob, and first-degree murder on the theory of felony-murder. Doc. No. 1 at 1.[1] In opening statements, trial counsel conceded to the charges of home invasion and armed assault and contested only Tillis's culpability for the murder. Doc. No. 14-18

---

[1] Citations to "Doc. No. __ at __" refer to submissions appearing on the Court's electronic docket ("ECF") using document and page numbers appearing in the ECF header appended to the top of each page of each item.

at 48-49. Tillis was convicted on all three charges and sentenced to life without the possibility of parole on December 23, 2016. Doc. No. 14-22 at 5.

The charges arose from a joint venture by Tillis and others to rob a drug dealer in Lowell, Massachusetts. Commonwealth v. Tillis, 159 N.E.3d 672, 674 (Mass. 2020). The Supreme Judicial Court of Massachusetts ("SJC") recited "the facts the jury could have found" as follows:

> On December 18, 2013, . . . [Tillis and three associates named Lopez, Rivera, and Grays] were seeking to find . . . "a way to make money." Eventually, the group met up with another one of [Tillis's] friends, Donte Okowuga.
>
> [Tillis], Lopez, Rivera, Grays, and Okowuga discussed potential targets for a robbery. . . . Grays then suggested robbing the victim, who lived on the third floor of an apartment building in Lowell. [Tillis] knew that the victim sold large amounts of cocaine. The other men agreed with this plan. In preparation for the robbery, [Tillis] confirmed that Okowuga had stored two firearms in his vehicle.
>
> Grays proceeded to the victim's apartment in order to determine . . . if the "coast was clear." Okowuga drove [Tillis], Lopez, and Rivera in a separate vehicle. . . .
>
> En route, [Tillis], Okowuga, Rivera, and Lopez discussed how they would carry out the robbery. They decided that, after gaining entry, Okowuga and Rivera would detain the victim at gunpoint, while [Tillis] tied him up. At the same time, Lopez would search the apartment for money or drugs.
>
> Okowuga parked a few blocks away, around the corner from the victim's apartment building. [Tillis] reached under the front passenger seat, retrieved a bag containing two firearms, and handed it to Okowuga. Okowuga gave one of the weapons to Rivera [who later passed it to Lopez]. He tucked the other inside his coat pocket. . . . [Tillis] carried a folding knife in his pants pocket.
>
> At approximately 8 P.M., [Tillis], Okowuga, Rivera, and Lopez entered the building and ascended two flights of stairs to the victim's apartment. [Tillis] had concealed his face with the collar of his jacket and a hat . . . . Okowuga wore a mask, and the other men hid their features with hooded jackets. The robbers confronted the victim as he was leaving his apartment. He struggled to shut the door, but Okowuga knocked it off its hinges.
>
> [Tillis], Okowuga, Rivera, and Lopez entered the victim's apartment. Okowuga trained his gun on the victim while [Tillis] and Lopez beat the victim with their fists and hit him with plates and other household items. The victim's [next-door] neighbor heard the noise, opened his door, and saw the beating in progress. . . .

> The victim was able to escape, and he ran from the apartment into the hallway, yelling, "Call the cops. Call the cops." Rivera noticed that neighbors had begun to gather in the hallway and became "a little scared because" of what the victim was saying. Okowuga announced that he was "effing out of here," and then he ran down the stairs. [Tillis] and Rivera followed. The victim, who was bleeding from the forehead, chased the three would-be robbers down the stairs and out of the apartment building. He grabbed a shovel near the front entrance and threw it at the fleeing men. Thereafter, a neighbor who lived on the first floor asked the victim if she should telephone the police; the victim answered, "No, I can handle it."
>
> Lopez did not leave with the other coventurers. The victim's next-door neighbor saw Lopez, armed with a gun, standing inside the victim's apartment. Lopez left the apartment as the victim returned home. At the top of the stairs, the victim charged at Lopez . . . . In response, Lopez shot the victim in the face and chest. The next-door neighbor then got into a fight with Lopez. During the struggle, Lopez accidently shot himself in the hand; he ran down the stairs and out the front door.
>
> [Tillis], Okowuga, and Rivera returned to the getaway vehicle . . . . Before they reached the vehicle, Rivera heard gunshots. As they were leaving, Okowuga . . . picked up Lopez, who was running down the street. Lopez told them that he had shot the victim. . . .
>
> Lopez gave the gun to [Tillis], who placed it back in the bag. A few days later, . . . [Tillis] met Okowuga in New Hampshire, where Okowuga sold the firearm to an acquaintance of [Tillis].
>
> On February 8, 2014, . . . [Tillis] was apprehended . . . . He told investigators that he had heard about the incident, was not involved in the shooting, and wanted to "clear things up." In a subsequent interview, [Tillis] admitted to having participated in a plot to steal money or drugs from the victim. He insisted that he never went inside the victim's apartment, and left the building "before there was even a struggle" or "after a little struggle." He fled because it was getting "crazy," with the victim yelling and the neighbors leaving their apartments. . . . When he was about a block away from the apartment building, [Tillis] heard gunshots.
>
> [Tillis] initially maintained that he did not know that one of his coventurers had entered the victim's apartment armed with a firearm. . . . Pressed by the investigators, [Tillis] changed his statement and said that Lopez had been "showing off" a small gun inside the vehicle during the drive to the victim's apartment building. . . . [Tillis] also said that he had entered the apartment building with a folding knife in his pocket.

Tillis, 159 N.E.3d at 674-78 (footnote omitted).

Following his sentencing, Tillis appealed and moved in state court for a new trial. See Doc. No. 1 at 2-3. Tillis's first motion for a new trial asserted ineffective assistance of trial

counsel. Id. at 17. The state judge denied this motion, finding that counsel did not commit any error, and even if he had, the error would not have resulted in prejudice. Id. at 17-19. On appeal, Tillis argued (1) that, as a matter of state law, he was entitled to a jury instruction on withdrawal from a joint venture, and (2) that he was deprived of effective assistance of counsel for the same reasons alleged in his motion for a new trial. Tillis, 159 N.E.3d at 677.

The SJC consolidated Tillis's direct appeal with his appeal of the order denying his motion for a new trial. Id. On December 23, 2020, the SJC rejected each of Tillis's claims and affirmed his conviction. Id. at 682.

On May 20, 2022, Tillis filed a second motion for a new trial, claiming appellate counsel was ineffective for failing to invoke Tillis's federal constitutional right to due process when challenging the trial court's refusal to instruct the jury on withdrawal.[2] Doc. No. 1 at 3. Tillis alternatively argued that the "SJC's decision upholding [his] conviction was premised on an unforeseeable change in the law of withdrawal from felony-murder that violated [Tillis's] due process rights." Doc. No. 14-3 at 463. The Superior Court judge denied both claims, finding no error by counsel and no change in the law. See Doc. No. 1 at 32, 34 n.2 (explaining that, "on the facts as presented at trial, [Tillis] did not effectively withdraw before the commission of an armed home invasion," and describing how the law applied in Tillis's case was consistent with decisions governing withdrawal at the time of his trial).

On January 23, 2023, Tillis sought leave to appeal the denial of his second post-trial motion, but a single justice of the SJC denied his application without a hearing. Id. at 34. Tillis now petitions for a writ of habeas corpus, claiming as follows: (1) "The trial court's refusal to

---

[2] This motion was litigated on Tillis's behalf by the same lawyer who is representing him now; a different lawyer represented Tillis for his direct appeal and his first motion for a new trial. See Doc. No. 1 at 13.

instruct the jury on [his] defense of withdrawal/abandonment (and the affirmance of that decision on appeal) violated [his] federal due process rights"; and (2) "Tillis was denied his . . . right to effective assistance of counsel when trial counsel failed to request supplemental instruction on felony murder."[3] Doc. No. 1 at 5, 7. Tillis's claims are fully briefed and ripe for disposition.

II. LEGAL STANDARD

State-court decisions resolving challenges to state criminal convictions merit substantial deference. A federal district court may not grant a writ of habeas corpus unless it finds that the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the Supreme Court has emphasized, such deference results in a federal habeas standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Pinholster, 563 U.S. at 181; see Burt v. Titlow, 571 U.S. 12, 19-20 (2013) (emphasizing the "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court). These standards "reflect[] the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Richter, 562 U.S. at 102.

A state-court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision

---

[3] Tillis filed his habeas petition days before the one-year limitation period expired. See Doc. No. 1 at 13-14.

of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court is not required to cite or even consider governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); cf. Richter, 562 U.S. at 100 (stating "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference).

For a habeas petitioner to prevail, the state-court judgment must contradict clearly established holdings of the Supreme Court—not law articulated by a lower federal court, and not dicta of any court. White v. Woodall, 572 U.S. 415, 419 (2014); accord Knowles v. Mirzayance, 556 U.S. 111, 122 (2009); see Glebe v. Frost, 574 U.S. 21, 24 (2014) (emphasizing that "circuit precedent does not constitute 'clearly established Federal law'" for purposes of § 2254(d)(1)); cf. Sanna v. Dipaolo, 265 F.3d 1, 11 (1st Cir. 2001) (explaining habeas relief is not available where a state court errs in applying state law). A state-court decision constitutes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. This is an objective inquiry. Id. at 409. If a petitioner's challenge amounts to a claim that the state court failed "to apply a specific legal rule that has not been squarely established by" the Supreme Court, the challenge must fail. Mirzayance, 556 U.S. at 122.

If a state court's decision "was reasonable, it cannot be disturbed." Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam); accord Renico v. Lett, 559 U.S. 766, 779 (2010). A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was

unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with" it). To succeed under § 2254, then, a petitioner must show that the state court's rejection of his claim was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options." Sanna, 265 F.3d at 13 (quotation marks omitted); see Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

A federal court will not reach the merits of a petitioner's claims if certain procedural prerequisites to habeas review are not satisfied. A petitioner asserting a violation of federal law must first exhaust the claim by fairly presenting its federal dimensions through all available levels of state-court review. 28 U.S.C. § 2254(b); see Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerkel, 526 U.S. 838, 839, 848 (1999); Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011). Failure to exhaust federal claims in state court risks procedural default of those claims for habeas purposes. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Procedural default also arises if a state court refuses to address a federal claim on its merits because of "a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (cleaned up); accord Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010). This bar to habeas review applies even if the underlying federal claim asserted error of constitutional magnitude. Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A petitioner may obtain review of defaulted claims by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law."[4] Coleman, 501 U.S. at 750; accord Martinez, 566 U.S. at 10; Janosky, 594 F.3d at 44. To demonstrate cause sufficient to excuse default, a petitioner must prove "some objective factor external to the defense impeded" the petitioner's ability "to comply with the [relevant] procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. To show "actual prejudice," a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 168 (1982); accord Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994).

Each of Tillis's challenges fails under these rigorous standards.

III. DISCUSSION

   A.   Due Process Claim

Tillis first attacks the state courts' rejection of his request for a jury instruction on a defense of withdrawal or abandonment. Doc. No. 16 at 24. Though expressed as a single ground for relief, this claim actually encompasses several related challenges. See Doc. No. 16 at 3; see also Doc. No. 23 at 20. None of them, however, entitle Tillis to habeas relief.

At the core of Tillis's first claim is an argument that he was entitled to an instruction on withdrawal from a joint venture as a matter of Massachusetts law. Doc. No. 16 at 20. This claim—which is the only one among those contained in Ground One that Tillis explicitly pressed during his first journey to the SJC—is a matter of state law and is not cognizable on habeas

---

[4] A petitioner also may overcome default by establishing a "fundamental miscarriage of justice," though that requires "new reliable evidence" of the petitioner's "actual innocence." House v. Bell, 547 U.S. 518, 538 (2006). Tillis has not offered such evidence here.

review.[5] See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (holding that "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief"). Understanding this, Tillis has attempted to recast his challenge as one (or several) arising under the Due Process Clause. In particular, Tillis invokes a collection of related theories grounded in the United States Constitution, urging that the trial court's instructional error: (1) so infected the trial that it violated his due-process rights, (2) constituted an unexpected change in the law, (3) denied Tillis his right to a defense, (4) unconstitutionally relieved the Commonwealth of its burden of proof, and (5) invaded the factfinder's province. See Doc. No. 16 at 28-33; see also Doc. No. 23 at 20. Each of these claims, however, are procedurally defaulted.

Tillis first mentioned his federal constitutional rights and articulated due-process claims in his second motion for a new trial. Doc. No. 14-3 at 442. After the trial court rejected the claims, a single SJC justice summarily denied Tillis further review of that ruling. Doc. No. 1 at 34. While he did not articulate the reasons for this denial, the record compels a finding that the appeal was rejected on procedural grounds and not on the claims' merits. See Mathews v. Silva, No. 09-12200, 2020 WL 1703795, at *8 (D. Mass. Apr. 8, 2020) (explaining that if "the gatekeeper justice [gives] no guidance as to" why petition is denied, "[t]he Court will . . . look to the record to determine the facts and procedural underpinnings of the ruling"); see also Gaskins v. Duval, 652 F. Supp. 2d 116, 124 (D. Mass. 2009) (looking to motion judge's findings to determine underpinnings of single justice's one-sentence denial).

---

[5] On direct appeal, Tillis argued that, under Massachusetts law and the facts presented at trial, he was entitled to jury instructions on withdrawal. Doc. No. 14-3 at 411. Tillis claimed that the trial judge's refusal to give such instructions was prejudicial error. Id. at 415. The SJC resolved this issue by analyzing and applying state law. It rejected Tillis's argument, explaining that "the defendant did not demonstrate a timely and effective withdrawal from . . . an attempted armed home invasion," which is the state-law threshold for entitlement to the relevant jury instruction. Tillis, 159 N.E.3d at 678.

Because Tillis's second motion for a new trial was litigated after the SJC's rescript marking the end of his first consolidated appeal, he was entitled to further review of the denial of his second post-verdict motion only if a gatekeeper justice determined that "it present[ed] a new and substantial question" warranting consideration "by the full court." Mass. Gen. Laws ch. 278, § 33E. "An issue is not 'new' within the meaning of" that statute "where either it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review." Commonwealth v. Ambers, 493 N.E.2d 837, 839 (Mass. 1986). If a single justice rejects an application like Tillis's upon finding the issues presented are not "new," that determination rests on an adequate and independent state-law ground that generally precludes federal habeas review of the underlying claims. See Lee v. Corsini, 777 F.3d 46, 55 (1st Cir. 2015).

None of the due-process claims raised in Tillis's second motion for a new trial and subsumed within the first ground for relief presented to this Court arise from facts or law that were unavailable on his first appeal. Rather, all arise from the same fundamental allegation of instructional error and from familiar constitutional principles arguably implicated by that alleged error. As such, the only plausible reading of the single justice's unadorned denial is that it was based on a finding that the due-process claims at issue were not "new." Tillis's due process claims are, therefore, procedurally defaulted. See Mathews, 2020 WL 1703795, at *8.

The question, then, is whether Tillis has established cause and prejudice for his default. In his reply brief, Tillis focuses on mounting a challenge to appellate counsel's ineffectiveness for not raising the due-process violations at issue. Doc. No. 28 at 1-2. To the extent he endeavors to recharacterize the constitutional claim presented in Ground One, his effort fails. Put simply, Tillis's petition does not present a challenge to appellate counsel's performance. See Doc. No. 1

at 5-10. Ground One expressly (and only) raises a due-process challenge related to the denial of a withdrawal instruction. It mentions counsel's ineffectiveness only in response to a question requiring information about when that challenge was presented in state court.[6] Such a response does not transform the nature of the constitutional claim articulated as the ground for habeas relief. This is especially so where the form was completed by counsel, and where counsel left blank two sections providing space for raising more constitutional grounds for relief. See id. at 8-10. Consistent with the petition's contents, Tillis's opening brief did not explore the issue of appellate counsel's ineffectiveness, either. See Doc. No. 16 at 24-28 (referencing appellate counsel's performance only in context of arguing state courts improperly effected a change in law and not as standalone ground for habeas relief); see also Doc. No. 13 at 20-37 (reflecting earlier-filed version of Tillis's merits brief also contained no argument expressly urging relief was warranted due to appellate counsel's ineffectiveness). Given all this, Tillis's reply arguments are better understood as an effort to establish cause for his default. This effort also fails.[7]

"A claim that has been procedurally defaulted may nevertheless be reviewed by a federal habeas court if the petitioner demonstrates cause for the default and prejudice resulting therefrom . . . ." Lee, 777 F.3d at 58. Tillis has made no such demonstration. Though ineffectiveness of counsel can, in some instances, provide cause for a default, this is not such a case. No

---

[6] The petition acknowledges that these due-process claims were not brought on direct appeal, explaining "the appeal did assert that it was error to deny the instruction, but did not present the due process claims arising from the change in the law, the burden shifting, the invasion of the jury's province, and the deprivation of a defense. This was ineffectiv[e]." Doc. No. 1 at 6.
[7] Were Tillis's reply brief (or even his earlier merits briefing) construed as an effort to amend his petition to add such a claim, the request would be untimely. Only a few days remained on Tillis's one-year limitations period when he filed his petition, and his brief came long after the period expired. And, even if the Court detected a basis to reasonably read an ineffectiveness-of-appellate-counsel claim into Tillis's petition, it would be meritless for the same reasons such a theory fails to establish cause for the default.

deficiency—let alone a prejudicial one—arises from a lawyer's failure to raise a meritless claim. Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990). As the Superior Court reasonably determined when rejecting Tillis's second motion for a new trial, Doc. No. 14-3 at 165, Tillis's due-process challenges depend on his entitlement to a withdrawal instruction under state law. For reasons the state courts have explained in their orders examining this case, Tillis was not entitled to such an instruction under state law as it existed before and after his trial. Id. at 166-67. No constitutional guarantee nor any federal law overrides that state-law determination or supports excusing Tillis's procedural default here.

Even if Tillis could overcome his procedural default, each of his due-process claims would fail on the merits. Considering the evidence presented at trial, the state-court determinations at issue do not even arguably contravene or unreasonably apply any federal law. The evidence painted a classic case of felony murder as it existed under Massachusetts law at the time of trial. There was overwhelming evidence that Tillis committed the predicate felony of home invasion—a point Tillis conceded. Doc. No. 14-18 at 46, 51. Tillis was not only present for the crime, but also actively participated in it by beating and injuring the victim at the threshold of his home. Doc. No. 14-19 at 78. Tillis was aware his co-venturers carried guns—indeed, Tillis had helped distribute the weapons and carried his own knife—and he participated in efforts to dispose of the gun used to shoot the victim. Doc. No. 14-19 at 75, 82; Doc. No. 14-20 at 57.

Despite leaving the house before the fatal shots were fired, Tillis made no statement communicating withdrawal from the joint venture. Doc. No. 14-20 at 53; Doc. No. 14-19 at 79-80. When the fight inside the house escalated, attracting the attention of neighbors, Tillis followed his co-venturer and fled to a nearby car. Doc. No. 14-20 at 53; Doc. No. 14-19 at 79-80. These actions suggested flight out of fear of apprehension for a crime already committed, and not

sincere abandonment of the joint venture. Instead of taking meaningful steps to disassociate himself from the shooter, Tillis and his co-venturers stopped to pick up the shooter moments after exiting the house, and the group fled the scene together. Doc. No. 14-20 at 54; Doc. No. 14-19 at 81-82. There was also evidence—including Tillis's own statement to law enforcement following his arrest, which the SJC highlighted in its decision—that the fatal shots were fired within moments of Tillis's flight, even before he reached the vehicle parked nearby. Doc. No. 14-19 at 80. And, days after the shooting, Tillis met a co-venturer to arrange disposal of the firearm used in the shooting. Doc. No. 14-20 at 57. Under these circumstances, there is simply no basis in federal law to find that Tillis's due-process rights were infringed by the denial of a withdrawal instruction defined by state law.[8]

In sum, the multiple components of Tillis's first claim are each either non-cognizable, procedurally defaulted, or meritless. No version of his challenge to the trial court's decision not to include a withdrawal instruction merits habeas relief.

      B.      <u>Ineffective Assistance of Counsel Claim</u>

Tillis next alleges a violation of his right to effective assistance of counsel arising from trial counsel's failure to request supplemental instruction on felony murder. Doc. No. 1 at 7. Tillis essentially argues that the SJC's rejection of this claim on appeal was an unreasonable

---

[8] In his brief, Tillis lists a series of events that, in his view, show the interval between his retreat and the shooting was meaningful. See Doc. No. 16 at 6. But the trial testimony and evidence make clear that the events unfolded quickly and, thus, the state courts reasonably determined that the facts did not support a withdrawal instruction. See Commonwealth v. Rivera, 981 N.E.2d 171, 188 (Mass. 2013) ("The mere act of leaving the apartment just prior to the murders is insufficient to constitute a communication of an intent to withdraw."). Tillis's trial counsel pursued a similar argument, drawing out the series of events in order to separate the murder from the underlying felony. Doc. No. 14-21 at 54-55. That theory of defense, which the jury rejected, had support in the jury instructions, which defined felony murder in terms of the temporal connection between the murder and the underlying offense. Id. at 31. This undermines Tillis's defaulted claim that the absence of a withdrawal instruction denied him a defense.

application of the law governing ineffective assistance of counsel. Doc. No. 16 at 34. Namely, Tillis alleges an unreasonable application of Strickland v. Washington, 466 U.S. 688 (1984), and its familiar standard. To satisfy that standard, a defendant must prove the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687. Tillis argues that the SJC unreasonably applied both aspects of this "clearly established federal law." 28 U.S.C. § 2254(d); see Doc. No. 16 at 35-37. "[F]or habeas purposes," the Massachusetts standard for ineffectiveness "is a functional equivalent of Strickland." Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir. 2002). When confronting a habeas claim of ineffective assistance of counsel, a federal court applies a "doubly deferential" standard that is even more daunting than the already formidable standard of habeas review. Yarborough v. Gentry, 540 U.S. 1, 6 (2003). Tillis has failed to meet this high standard.

In considering Tillis's ineffective assistance of counsel claim, the SJC summarized the instructions given to the jury as follows:

> [F]elony-murder require[s] the Commonwealth to prove that the act which caused the death occurred during the commission or the attempted commission of the underlying felony. As noted above, the underlying felony for this charge of felony murder in the first degree is armed home invasion. The Commonwealth must prove beyond a reasonable doubt that the act that caused the death of the decedent occurred in connection with that felony and at substantially the same time and place. A killing may be found to be connected with the felony if the killing occurred as part of the effort to escape responsibility for the felony by the defendant or by another participant in the commission or the attempted commission of the underlying felony.

Tillis, 159 N.E.3d at 680. Trial counsel did not object to these instructions, nor did he request an augmentation to include the following: "if the attempted crime was completely over before the act which caused the death, then that act has not occurred during the commission or the

attempted commission of the underlying felony." See Doc. No. 16 at 14. On appeal, Tillis argued (as he does here) that trial counsel's failure to request this supplemental instruction constituted ineffective assistance.

The SJC considered and rejected this claim. See Tillis, 159 N.E.3d at 680-81. The SJC found that "the requested supplemental instruction would not have enhanced the jury's understanding of the Commonwealth's burden to prove the third element of felony-murder." Id. at 681. In support, the SJC cited its own precedent that describes the relevant state criminal law as follows:

> The Commonwealth is not required to prove that the killing occurred during the course of the predicate felony. . . . For purposes of felony-murder, the homicide and the predicate felony need only to have occurred as part of one continuous transaction, and the connection is sufficient as long as the predicate felony and the homicide took place at substantially the same time and place. The killing may occur after the completion of the predicate felony as long as the killing is within the res gestae of the felonious conduct.

Commonwealth v. Morin, 85 N.E.3d 949, 957 (Mass. 2017). Against this backdrop, the SJC held that the trial judge "properly instructed the jury that the killing must have occurred at substantially the same time and place as the underlying felony," and that "a failure to object to this language or to request additional instructions for clarification, does not constitute ineffective assistance of counsel." Tillis, 159 N.E.3d at 681 (cleaned up).

The SJC's resolution of Tillis's claim was not an unreasonable application of the Strickland standard. The case law cited by the SJC plainly supports the sufficiency of the instructions provided at trial. See Morin, 85 N.E.3d at 957. Based on this, it was reasonable for the SJC to find that trial counsel was not "defective" in failing to object to the instructions given. Tillis argues it "is simply not true" that "a failure to request additional instructions for clarification of an adequate instruction does not constitute deficient performance as a matter of law." Doc. No. 16 at 35. Even if Tillis is right, however, he has not demonstrated that this is a

case where the failure to request clarifying instructions supports a finding of deficient performance. Here, the instructions given were not only adequate, but the supplemental instruction now proposed was squarely contradicted by binding SJC case law. In other words, the instruction Tillis faults his lawyer for not seeking would not have clarified, but rather misrepresented, the law.

In these circumstances, the SJC reasonably found no defect in counsel's performance, and federal law neither compels nor supports a different result. Accordingly, Tillis's claim of ineffective assistance of counsel does not entitle him to habeas relief.

IV. <u>CONCLUSION</u>

Because each claim fails on procedural or substantive grounds (or both), Tillis's habeas petition (Doc. No. 1) is DENIED.[9]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[9] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. As explained above, the bulk of Tillis's first claim is either not cognizable on habeas review or procedurally defaulted. In any event, the SJC evaluated each of Tillis's challenges in a manner that was consistent with federal law.